UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LAVERNE ALMA FRAZIER,

       Plaintiff,

v.                                        Case No. 3:20-cv-153-MAP

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

_____/

## ORDER

       This is an appeal of the administrative denial of supplemental security income (SSI) and disability insurance benefits (DIB).[1] *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Plaintiff argues her case should be remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for three reasons:  (1) the administrative law judge (ALJ) should have ordered a consultative neurological evaluation; (2) the Appeals Council (AC) erred in considering the additional evidence Plaintiff submitted after the ALJ's decision; and (3) the ALJ failed to articulate the weight assigned to consultative examiner Badri Mehrotra, M.D.'s opinion.  After considering Plaintiff's arguments, Defendant's response, and the administrative record (docs. 18, 23, 24), I find the AC erred in its consideration of the new evidence Plaintiff submitted.  I remand.

       A. *Background*

       Plaintiff Laverne Frazier was born on July 10, 1960, and was 53 years old on her alleged onset date of March 5, 2014. (R. 56-57)  For a few years during her childhood, she attended The Yates Center, a school for special needs children in St. Augustine, Florida. (R.

---

[1]  The parties have consented to my jurisdiction under 28 U.S.C. § 636(c).

44, 64)   Plaintiff's testimony is confusing in spots – her attorney attributes this to her diminished intellectual capacity – but it appears she obtained her high school diploma.[2] (R. 56)   At the time of the ALJ's hearing in 2018, Plaintiff was working four days a week as a salad bar stocker at a Sonny's Barbeque, a job she had held off and on since 2008. (R. 57-58)   The ALJ determined this work did not rise to the level of substantial gainful activity (SGA). (R. 28)   When the ALJ asked her why she cannot work full time, Plaintiff said she does not have a ride. (R. 58)   Before working at Sonny's, Plaintiff worked in housekeeping at a hotel. The ALJ determined Plaintiff has past relevant work as a cook's helper and a cleaner, housekeeper.   (R. 34-35)

Plaintiff alleges disability due to diabetes, osteoarthritis, and an unspecified mental illness.   She contends she has been unable to work since March 5, 2014, due to the overall worsening of her impairments. (R. 53)   When the ALJ asked her, "was there a reason why you became unable to work on that day?" (R. 57)   She replied, "[w]ell, didn't have nothing else to do.   I had to do something." (*Id.*)   Plaintiff has lived alone in the past, but on the hearing date she lived with a friend who drove her to the hearing and often drives her to and

---

[2] For example, the ALJ asked her: "What is the highest level of education that you completed?" (R. 56)   She responded, "I don't understand that." (*Id.*)   The ALJ reworded the question; Plaintiff still did not understand. (*Id.*)   Then her attorney asked if she took special education classes through high school graduation, and she said yes. (R. 64)   The ALJ asked Plaintiff, "Do you live with anyone else?" (R. 60) and she said, "No, I do not." (*Id.*)   But when her attorney asked, "Are you living alone right now?" (R. 65) she responded, "No." (*Id.*)   The ALJ asked Plaintiff how many hours a day she works.   She said "Monday, Wednesday, Thursday, and Friday." (R. 57)   The ALJ tried again:   "How many hours a day do you work?" (*Id.*)   Plaintiff testified: "Four days." (*Id.*) The ALJ, again: "And how many hours each day?" (*Id.*) Plaintiff: "Except Saturday and Sunday." (*Id.*) Taking a different tack, the ALJ asked Plaintiff what time she goes into work and what time she comes home. Plaintiff responded, "I get up at 4 in the morning." (R. 58)

from work. (R. 65-66) Plaintiff testified that her friend helps her with grocery shopping and pays the bills.  When she is not working, Plaintiff spends time at home, watching TV. (R. 61)

In her written decision issued after the hearing, the ALJ found Plaintiff has the severe impairments of "diabetes mellitus with neuropathy; right hip osteoarthritis; and organic mental disorder/neurocognitive disorder."[3] (R. 29)  The ALJ determined that Plaintiff does not meet or medically equal the requirements of a listed impairment.   Regarding the psychiatric review technique (PRT) (a method used to evaluate the severity of mental impairments at steps two and three of the sequential evaluation process), the ALJ found that Plaintiff has moderate limitations in understanding, remembering, or applying information; mild limitations in interacting with others; moderate limitations in concentrating, persisting, or maintaining pace; and moderate limitations in adapting or managing oneself. (R. 30-31)

Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled as she has the RFC to perform light work:

> [including] lifting/carrying up to 10 pounds frequently and 20 pounds occasionally; sitting about six hours in an eight hour workday; standing and walking a total of six hours in an eight hour workday; no more than frequent balancing; no more than occasional climbing of ramps/stairs, stooping, kneeling, crouching, crawling; no climbing of ladders, ropes and scaffolds; no more than occasional exposure to dangerous machinery and unprotected heights; no concentrated exposure to pulmonary irritants (dust, fumes, odors, gases, poor ventilation); and no more than simple, routine, repetitive tasks.

---

[3]  Plaintiff's date last insured (DLI) for DIB purposes was September 30, 2018. (R. 28) For DIB claims, a claimant is eligible for benefits if she demonstrates disability on or before her DLI.  42 U.S.C. § 423(a)(1)(A).  Because Plaintiff's DLI is September 30, 2018, she must show she was disabled on or before that date.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

(R. 31)  Based on the VE's testimony, the ALJ found that, with this RFC, Plaintiff could not perform her past relevant work as a cook's helper but could perform her past relevant work as a cleaner, housekeeper as the job is actually and normally performed. (R. 34)

After the ALJ's September 5, 2018 decision, Plaintiff submitted to the AC a psychological evaluation performed by Peter Knox, Psy.D. on November 15, 2018. (R. 44-48)  Dr. Knox tested Plaintiff and determined she has a full-scale IQ of 50, which falls in the extremely low range. (R. 46)  The AC incorporated this evidence into the record and granted Plaintiff's request for review but found Dr. Knox's report "does not relate to the period at issue" and "does not affect the decision about whether the claimant was disabled beginning on or before September 5, 2018." (R. 9)  The AC adopted the ALJ's findings at steps one through three of the sequential evaluation process yet disagreed with the ALJ's PRT assessment, finding the hearing decision "provides limited explanations as to how [the ALJ] evaluated these four broad functional areas." (R. 10)  Providing a more detailed PRT analysis that scrutinized Katina Shine, Ph.D.'s July 2015 psychological consultative evaluation, the AC determined Plaintiff is moderately limited in understanding, remembering, or applying information; mildly limited in interacting with others; moderately limited in concentrating, persisting, or maintaining pace; and mildly limited in adapting or managing oneself (findings that are less restrictive than the ALJ's). (R. 10-11)

The AC incorporated this revised PRT assessment into its analysis and, in the end, adopted the ALJ's RFC finding, the ALJ's step four finding that Plaintiff can return to her past work as a cleaner, housekeeper, and the ALJ's ultimate determination that Plaintiff is not disabled. (R. 11)  The combined September 5, 2018 ALJ decision and the January 7, 2020

AC decision constitute the Commissioner's final decision.  Plaintiff, having exhausted her administrative remedies, filed this action (doc. 1).

B.  *Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must

decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

C. *Analysis*

1. *ALJ's duty to develop the record*

Plaintiff's first argument is that the ALJ failed to fully develop the record by denying Plaintiff's request for a second consultative psychological evaluation (doc. 23 at 8-13).[4] Plaintiff requested the evaluation before her hearing in a letter from her attorney to the agency and again during it. (R. 52, 72) The Commissioner retorts that a second consultative

---

[4] Dr. Shine conducted a consultative psychological evaluation of Plaintiff at the agency's request on July 14, 2015. (R. 435-37)

6

evaluation was unnecessary because the record contained enough evidence for the ALJ to make an informed decision (doc. 24 at 7-14).

The claimant "bears the burden of proving [s]he is disabled, and, consequently, [s]he is responsible for producing evidence to support [her] claim." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). But because a hearing before the ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). This obligation exists even if the claimant is represented by counsel. *Id*.

The record contains numerous suggestions that Plaintiff functions at a low cognitive level: Plaintiff attended a school for special needs students during her elementary years and was enrolled in special education classes through high school (R. 44, 64); she testified she struggled to read and write; her friend and roommate helps her pay her bills and get to and from work (R. 66-67); consultative examiner Dr. Shine concluded Plaintiff's mental health symptoms severely impact her activities of daily living (R. 435-37); Plaintiff's medical records include a referral to psychiatry and separate notations that she appears "mentally challenged," is unable to care for herself, and needs to be in an assisted living facility (R. 562, 575, 603); and Plaintiff's hearing testimony itself suggested diminished cognitive functioning (*see* R. 52-74). Plaintiff points to this evidence and argues the ALJ should have ordered IQ testing and additional psychiatric testing to determine the severity of Plaintiff's mental impairment, especially considering the requirements of Listing 12.05 (intellectual disorders).

To backtrack, at step three, Plaintiff has the burden of establishing the existence of an impairment or combination of impairments that meets or equals the criteria of a medical listing in 20 C.F.R. pt. 404, Subpt. P, App. 1. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th

Cir. 1991).  The purpose of the medical listings is to "streamline the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  If a claimant establishes that she meets or equals a listing, no further proof of disability is required.  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).

A claimant must meet or equal *all* the requirements of a listing.  *Id.* at 530-31. Diagnosis of a listed impairment is not enough; the record must contain corroborative medical evidence supported by clinical and laboratory findings.  *Carnes*, 936 F.2d at 1218.  And if a claimant contends that an impairment equals a listed impairment, the claimant must present evidence that describes how the impairment has such an equivalency.  *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

Here, Plaintiff alleges an unspecified mental illness as one of the impairments rendering her unable to work.  The ALJ considered Plaintiff's mental functioning to be enough of a question mark that she evaluated Plaintiff's impairments at step three in the context of Listing 12.05 regarding intellectual disorders. (R. 29-30)  Paragraph B of Listing 12.05 references full-scale IQ scores.  But the ALJ found that Plaintiff did not satisfy Paragraph B because "there are no listing level IQ scores in the record." (R. 30)

Plaintiff is correct that a consultative evaluation (including an IQ assessment) would have filled this evidentiary gap.  Even if the ALJ failed to fully develop the record in this regard, however, Plaintiff was not prejudiced.  Plaintiff appealed the ALJ's decision to the AC, and she submitted to the AC the results of Dr. Knox's educational testing, which included a full-scale IQ score of 50.  By doing so, Plaintiff cured any deficiencies in the record. *Hethcox v. Comm'r of Soc. Sec.*, 638 F. App'x 833, 835 (11th Cir. 2015) (rejecting plaintiff's

argument that ALJ did not fully develop the record when claimant submitted to the AC evidence of IQ testing performed after the ALJ's decision; Plaintiff was not prejudiced by evidentiary gap before the ALJ because she cured the deficiency). The AC incorporated this evidence into the record and granted Plaintiff's request for review. Plaintiff's first argument fails.

### 2. AC's consideration of new evidence

Next, Plaintiff makes the related argument that the AC did not properly evaluate the results of the educational tests Dr. Knox administered to Plaintiff, which post-date the ALJ's decision by two months, in the context of Listing 12.05. Plaintiff contends Dr. Knox's report relates to the period at issue because "IQ testing should not vary significantly and should not substantially improve or regress with the passage of time." (Doc. 23 at 10). The Commissioner counters: "Dr. Knox's report only provides findings and [IQ] test results that reflect Plaintiff's condition at the time of the evaluation (Tr. 44-49), not some two months or longer before." (Doc. 24 at 13). Additionally, the Commissioner states the AC did not have to explain its reasons for finding that Dr. Knox's report is not chronologically relevant, and Plaintiff's work history does not paint the picture of a claimant with significant deficits in adaptive functioning, another requirement of Listing 12.05. For the reasons stated below, I side with Plaintiff.

A claimant may present evidence at each stage of the administrative process. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). If a claimant presents evidence after the ALJ's decision, the AC must consider it if it is new, material, and chronologically relevant. 20 C.F.R. § 416.1470(b); *see also Washington v. Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015). Evidence is material if a reasonable possibility exists that

it would change the administrative result.  *Washington*, 806 F.3d at 1321.  New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 416.1470(b).  The AC must grant the petition for review if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence.  *Ingram*, 496 F.3d at 1261 (quotation marks omitted); *see also Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-01 (11th Cir. 2008) (*per curiam*).

In other words, a claimant seeking remand under sentence four of 42 U.S.C. § 405(g) "must show, in light of the new evidence submitted to the AC, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 902 (11th Cir. 2013).  In most sentence four cases where a plaintiff prevails on this argument, the AC has incorporated the new evidence into the record yet denied a claimant's request for review.  Here, in contrast, the ALJ incorporated the new evidence and *granted* review.  But this distinction makes no difference because the AC did not support its decision with substantial evidence.

The context of Dr. Knox's report – and the AC's consideration of it – is key.  When an ALJ evaluates a claimant's mental impairments at steps two and three, she utilizes the PRT to assess the claimant's functional limitations in four areas: social functioning; activities of daily living; concentration, persistence, or pace; and episodes of decompensation.  *See Moore v. Barnhart*, 405 F.3d 1208, 1213-14 (11th Cir. 2005).  The ALJ incorporates the results of the PRT into her findings and conclusions at steps four and five of the sequential evaluation process.  *See Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013).[5]

---

[5] The PRT is separate from the ALJ's evaluation of a claimant's RFC, which is an assessment of a claimant's maximum ability to do work despite her impairments.  The mental RFC is a more detailed assessment of the claimant's ability to function.  *Winschel v. Comm'r of Soc. Sec.*,

Here, the AC granted Plaintiff's request for review of the ALJ's decision, incorporated Dr. Knox's November 5, 2018 report into the administrative record, and stated: "The [ALJ] decided the case through September 5, 2018.  This additional evidence does not relate to the period at issue.  Therefore, it does not affect the decision about whether the claimant was disabled beginning on or before September 5, 2018."[6] (R. 9)  But the AC took issue with the ALJ's PRT findings, stating the ALJ's decision "provides limited explanations as to how it evaluated these four broad functional areas." (R. 10)  Although the AC conducted its own review of these areas of functioning, in the end the outcome did not change:  the AC found Plaintiff has no more than moderate limitations in all four areas.  Then it adopted the ALJ's RFC determination and the finding that Plaintiff can perform past relevant work and found Plaintiff not disabled.  (R. 9-12)

I cannot find that substantial evidence supports the AC's decision, because the AC did not address Dr. Knox's findings in the context of Listing 12.05.  The listings define intellectual disorder:

> This disorder is characterized by significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder before age 22. Signs may include, but are not limited to, poor conceptual, social, or practical skills evident in your adaptive functioning.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00B4.   A claimant must meet the elements of either Paragraph A or B to qualify for the listing.  Paragraph A requires a showing of three criteria:

---

631 F.3d 1176, 1180 (11th Cir. 2011).  An ALJ must be more thorough in evaluating a claimant's RFC at step four than in assessing the severity of mental impairments at steps two and three.  *Id.*

[6] The AC suggested Plaintiff base a new disability application on Dr. Knox's evaluation. (*Id.*)

1.      Significantly subaverage general intellectual functioning evident in your cognitive inability to function at a level required to participate in standardized testing of intellectual functioning; and

2.      Significant deficits in adaptive functioning currently manifested by your dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing); and

3.      The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(A).

Paragraph B, on the other hand, requires a claimant to satisfy these three criteria

(including subparts):

1.      Significantly subaverage general intellectual functioning evidenced by a or b:
        a.      A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
        b.      A full scale (or comparable) IQ score of 71-75 accompanied by a verbal or performance IQ score (or comparable part score) of 70 or below on an individually administered standardized test of general intelligence; and

2.      Significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
        a.      Understand, remember, or apply information; or
        b.      Interact with others; or
        c.      Concentrate, persist, or maintain pace; or
        d.      Adapt or manage oneself; and

3.      The evidence about your current intellectual and adaptive functioning and about the history of your disorder demonstrates or supports the conclusion that the disorder began prior to your attainment of age 22.

*See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(B).

. The ALJ found that Plaintiff could not meet the Paragraph A criteria of the listing,

because "the record does not support significantly subaverage intellectual functioning and

significant deficits in adaptive functioning prior to age 22.  The claimant has been able to

work at SGA and currently works part time.  She is independent in caring for her personal

needs." (R. 30)   And (as explained in the previous section) Plaintiff could not meet the Paragraph B criteria of the listing, according to the ALJ, because "there are no listing level IQ scores in the record and no extreme or marked limitations of mental functioning." (*Id*.)

Enter Dr. Knox's test results.   Dr. Knox tested Plaintiff on November 15, 2018 (two months after the ALJ's decision), and assessed a full-scale IQ of 50, based on the Wechsler Adult Intelligence Scale. (R. 44-49)   This score is in the extremely low range. (R. 46)   Dr. Knox determined that Plaintiff's "verbal comprehension and perceptual reasoning abilities were both in the extremely low range.   [Plaintiff's] ability to sustain attention, concentration, and exert mental control is in the extremely low range.   [Plaintiff's] ability in processing simple or routine visual material without making errors is in the extremely low range when compared to her peers." (R. 49)   According to Dr. Knox, Plaintiff's prognosis was "guarded." (*Id*.).

Evidence may be chronologically relevant even if it post-dates the ALJ's decision.   For instance, in *Washington*, 806 F.3d at 1322, the Eleventh Circuit considered an examining psychologist's opinions to be chronologically relevant "even though [the psychologist] examined [the claimant approximately seven] months after the ALJ's decision."   The psychologist had reviewed the claimant's treatment records from the period before the ALJ's decision; the claimant had told the psychologist he had suffered from the conditions "throughout his life" (which obviously included the relevant time period); and there was "no assertion or evidence" that the claimant's condition worsened "in the period following the ALJ's decision."   *Id*.; *see also Wordsman v. Berryhill*, 2019 WL 1349821, at *4-5 (M.D. Fla. Mar. 26, 2019) (remanding to the Commissioner for reconsideration of evidence submitted to the AC for the first time; evidence that post-dated relevant period by four months).

On the other hand, in *Stone v. Commissioner of Social Security Administration*, 658 F. App'x 551, 555 (11th Cir. 2016), the Eleventh Circuit found the circumstances "significantly different" from those present in *Washington*. The records in *Stone* "demonstrate[d] a worsening" of the relevant symptoms after the ALJ's decision. *Id.* And in *Hargress v. Commissioner of Social Security Administration*, 883 F.3d 1302, 1309-10 (11th Cir. 2018), the Eleventh Circuit found that progress notes post-dating the ALJ's decision did not "relate to the period before the ALJ's . . . decision" and "nothing in these new medical records indicates the doctors considered [the claimant's] past medical records or that the information in them relates to the period at issue, which materially distinguishes this case from *Washington*." *Id.*; *see also Smith*, 272 F. App'x at 801-02 (affirming district court's decision; new evidence submitted to AC did "not establish a likelihood that the ALJ would have reached a different result," in part because they post-dated the ALJ's decision by between four and eight months). Evidence that a condition the ALJ previously considered has deteriorated may entitle a claimant to benefits under a new application, but it is not probative of whether a person is disabled during the specific period under review. *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999); *see also Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 858 (11th Cir. 2018) (finding MRI report prepared four months after ALJ's decision not chronologically relevant or material as there was no indication report related back to the relevant time period).

I find this case more like *Washington* and less like *Stone* and *Hargress*. First, Dr. Knox accounted for Dr. Shine's 2015 report: "The information for this report was gathered from Ms. Frazier's own reports as well as a 2015 Psychological Evaluation that saw her to have an Unspecified Neurocognitive Disorder." (R. 44) Second, the new evidence included an IQ examination yielding a score of 50. Listing 12.05(B)'s requirements include a full-scale IQ

14

score of 70 or below. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(B). The AC is not required to "give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision." *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014). But it must "apply the correct legal standards in performing its duties." *Id.*

There is nothing in the AC's denial to indicate that it properly determined whether the new, material evidence met Listing 12.05(B)'s requirements.   As stated, Paragraph B may be satisfied by showing (1) a full-scale IQ score of 70 or below; (2) significant deficits in adaptive functioning currently manifested by extreme limitation in one, or marked limitation in two, of four broad functional areas identified below; and (3) evidence showing that the disorder manifested before age 22. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B. For prong (2), adjudicators must assess an individual's ability to (a) understand, remember, or apply information; (b) interact with others; (c) concentrate, persist, or maintain pace; and (d) adapt or manage oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05(B)(2).

The Commissioner argues that even if the AC had found Dr. Knox's IQ testing to be new and material evidence, this is not enough to satisfy subparagraphs two and three of Paragraph B. But without the AC properly considering Plaintiff's IQ scores, it is impossible to know how this information would have factored into the rest of the AC's analysis under Listing 12.05. In *Hodges v. Barnhart,* 276 F.3d 1265 (11th Cir. 2001), the Eleventh Circuit held that IQ tests create a rebuttable presumption of a fairly constant IQ score throughout life; thus, a claimant need not submit IQ test scores prior to age 22 to satisfy the requirements of Listing 12.05. To rebut this presumption, the Commissioner may present evidence of a plaintiff's daily life. *O'Neal v. Comm'r of Soc. Sec.*, 614 F. App'x 456, 459 (11th Cir. 2015); *see*

*also Alexander v. Berryhill*, No. 2:17-CV-568-FTM-DNF, 2019 WL 851414, at *5 (M.D. Fla. Feb. 22, 2019) (collecting cases).

But here, the AC did not apply the *Hodges* presumption because it found Dr. Knox's report was not new or material.   Consequently, it is impossible for me to assess if the Commissioner properly rebutted the presumption.   Additionally, Dr. Knox's report bolsters Dr. Shine's conclusions that Plaintiff's impairments significantly impact her ability to function.   Yet the AC's finding that Dr. Knox's evaluation is not chronologically relevant renders it impossible to discern how Dr. Knox's findings impacted the agency's consideration of Dr. Shine's report.   Failing to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.   *Cornelius v. Sullivan,* 936 F.2d 1143, 1145-46 (11th Cir. 1991).   For that reason, I find the AC's decision is not supported by substantial evidence and remand with instructions for the AC to remand the case to the agency.[7]

D.      *Conclusion*

For the reasons stated above, it is ORDERED:

> (1) The Commissioner's decision is REVERSED and REMANDED to the agency for proceedings consistent with this Order.

---

[7]  Because I remand Plaintiff's case, I do not address Plaintiff's final argument that the ALJ erred in considering the July 13, 2015 report of physical consultative examiner Badri Mehrotra, M.D. (doc. 23 at 13-14).

(2) The Clerk of Court is directed to enter judgment for Plaintiff and close the

case.

DONE and ORDERED in Tampa, Florida on August 12, 2021.

_Mark A. Pizzo_

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE